UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JOSHUA HARGROVE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )  No. 1:16-cv-01922-JMS-MJD |
| | ) |
| NANCY A. BERRYHILL,[1] | ) |
| | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION**

Plaintiff Joshua Hargrove requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act").[2] *See* 42 U.S.C. §§ 416(i), 423(d). For the reasons set forth below, the Magistrate Judge recommends that the District Judge **REVERSE** and **REMAND** the decision of the Commissioner.

## I.  Background

Hargrove filed his application for DIB on February 15, 2015, alleging January 1, 2006 as the onset date of his disability as a result of his service in the United States Marine Corps during the Iraq war. [Dkt. 13-6 at 2 (R. 167).] In his disability report, Hargrove listed post-traumatic

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit.

[2] In general, the legal standards applied in the determination of disability are the same regardless of whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

1

stress disorder and back and neck problems as his disabling conditions. [Dkt. 13-6 at 6 (R. 171).] Hargrove's application was denied initially on May 13, 2015 [Dkt. 13-4 at 2-6 (R. 102-06)] and denied again upon reconsideration on August 4, 2015 [Dkt. 13-4 at 7-10 (R. 107-10).]. Hargrove requested a hearing on September 25, 2015 [Dkt. 13-4 at 12-13 (R. 112-13)] and testified before Administrative Law Judge Dennis Lyndell Pickett (ALJ) on January 28, 2016 [Dkt. 13-2 at 39-79 (R. 38-78)]. The ALJ denied Hargrove's application again on February 9, 2016. [Dkt. 13-2 at 17-38 (R. 16-37).] The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Hargrove's request for review on May 20, 2016. [Dkt. 13-2 at 2-7 (R. 1-6.] Hargrove timely filed his Complaint with this Court on July 20, 2016, seeking judicial review of the Commissioner's decision. [Dkt. 1.]

## II. Legal Standard

To be eligible for DIB, a claimant must have a disability pursuant to 42 U.S.C. § 423. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

To determine whether a claimant is disabled, the ALJ employs a five-step sequential analysis: (1) if the claimant is engaged in substantial gainful activity, he is not disabled; (2) if the claimant does not have a "severe" impairment, or one that significantly limits his ability to perform basic work activities, he is not disabled; (3) if the claimant's impairment or combination of impairments meets or medically equals any impairment appearing in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, the claimant is disabled; (4) if the claimant is not found to be disabled at step three and he is able to perform his past relevant work, he is not

2

disabled; and (5) if the claimant is not found to be disabled at step three and either cannot perform his past relevant work or has no past relevant work but can perform certain other available work, he is not disabled. 20 C.F.R. § 404.1520. Before proceeding from step three to step four, the ALJ must assess the claimant's residual functional capacity (RFC), identifying the claimant's functional limitations and assessing the claimant's remaining capacity for work related activities. S.S.R. 96-8p, 1996 WL 374184.

The ALJ's findings of fact are conclusive and must be upheld by this Court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* The Court may not reweigh the evidence or substitute its judgment for that of the ALJ but may only determine whether substantial evidence supports the ALJ's decision. *Overman v. Astrue*, 546 F.2d 456, 462 (7th Cir. 2008) (citing *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007)). The ALJ "need not contain a complete written evaluation of every piece of evidence." *McKinzey v. Astrue*, 641 F.3d 884, 891 (7th Cir. 2011) (quoting *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005)). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala* 19 F.3d 329, 333 (7th Cir. 1997). To be affirmed, the ALJ must articulate his analysis of the evidence in his decision. The ALJ must "provide some glimpse into his reasoning" and "build an accurate and logical bridge from the evidence to his conclusion." *Dixon*, 270 F.3d at 1176. The scope of review is confined to the rationale offered by the ALJ. *See SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010).

### III. The ALJ's Decision

In his decision, the ALJ first determined that Hargrove met the insured status requirements of the Act through December 31, 2013 and had not engaged in substantial gainful activity during the period from his alleged onset date of January 1, 2006 through his date last insured of December 31, 2013. [Dkt. 13-2 at 22 (R. 21).] At step two, the ALJ found Hargrove's severe impairments to include "left brachial plexitis; mild cervical spondylosis; anxiety; depression; posttraumatic stress disorder; polysubstance abuse." [Dkt. 13-2 at 22 (R. 21).] At step three, the ALJ determined that Hargrove did not have an impairment or combination of impairments that meets or medically equals a Listing. The ALJ specifically evaluated Listing 1.02 for major dysfunction of a joint, Listing 1.04 for disorders of the spine, and Listings 12.04, 12.06, and 12.09 for mental impairments. [Dkt. 13-2 at 23-24 (R. 22-24).]

Before step four, "after careful consideration of the entire record," the ALJ determined that Hargrove had the RFC to perform medium work as defined in 20 CFR 404.1567(c). [Dkt. 13-2 at 25 (R. at 24).] The ALJ found the following:

> [Hargrove] could occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs; never climb ladders, ropes, or scaffolds; frequently reach in all directions with left non-dominant hand; occasionally reach overhead with the left non-dominant hand; frequently handle, finger, and feel with the left non-dominant hand; limited to simple, routine tasks; occasional contact with supervisors and coworkers; and no contact with the general public.

[Dkt. 13-2 at 25 (R. 24).] At step four, the ALJ found that Hargrove could perform his past relevant work as an animal caretaker and farm laborer. [Dkt. 13-2 at 30 (R. 29).] The ALJ concluded on the basis of these findings that Hargrove was not disabled under the Act. [Dkt. 13-2 at 30 (R. 29).]

4

## IV. Discussion

Hargrove makes many arguments as to why the decision of the Commissioner should be reversed, challenging various aspects of the ALJ's step three determination, RFC determination, and past relevant work determination. Critical to most of Hargrove's arguments is his contention that the ALJ gave insufficient weight to his subjective complaints of severe anxiety, depression, and other symptoms of post-traumatic stress disorder, arising from Hargrove's tour of duty in Iraq where he witnessed horrific atrocities. [S*ee, e.g.*, Dkt. 13-12 at 83 (R. 679).] Hargrove maintains that the ALJ's errors in the credibility assessment resulted in him improperly assessing Hargrove's limitations throughout his opinion. Finding the ALJ's credibility determination dispositive of Hargrove's appeal, the Court addresses this issue first.

Hargrove specifically argues that the ALJ erred in his credibility assessment by relying upon impermissible inferences and selectively considering the relevant evidence. In response, the Commissioner argues that the ALJ reasonably assessed the evidence and applied the relevant factors such that his credibility determination was not patently wrong. In reply, Hargrove argues that the Commissioner's response reinforces the selective nature of the ALJ's credibility assessment.

The ALJ's credibility assessment generally warrants "special deference because the ALJ is in the best position to see and hear the witness and determine credibility," *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000), though a court has "greater freedom to review credibility determinations based on objective factors . . . rather than subjective considerations," *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 354 (7th Cir. 2005). Among the factors an ALJ may consider in evaluating credibility are daily activities, nature of pain, and use of medication or other treatment. *See* 20 C.F.R. § 404.1529(C)(3). While the ALJ may not disregard a claimant's

testimony about the effect of his conditions on his ability work "solely because [it is] not substantiated by objective medical evidence," S.S.R. 96-7p, 1996 WL 374186,[3] the ALJ is still entitled to resolve any "discrepancies between the objective evidence and self-reports," *Jones v. Astrue*, 623 F.3d 1155, 1161 (7th Cir. 2010). The critical inquiry is whether the ALJ's credibility determination is "reasoned and supported," as it may be overturned only if it is "patently wrong." *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008). A credibility determination is patently wrong if it is illogical or "lacks any explanation or support." *Id.*

The Court agrees with Hargrove that "the ALJ demonstrated a fundamental, but regrettably all-too-common, misunderstanding of mental illness," ignoring the reality that "a person who suffers from a mental illness will have better days and worse days" and selectively relying upon "snapshot[s] of . . . single moments." *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011). For example, while the ALJ discredited Hargrove's complaints of extreme social anxiety in part because of his involvement in church [Dkt. 13-2 at 28 (R. 27).], the ALJ completely ignored Hargrove's testimony that Hargrove stopped attending church because of regular panic attacks [Dkt. 13-2 at 54 (R. 53)]. The ALJ also highlighted that Hargrove was able to communicate with his then-wife and stepchildren [Dkt. 13-2 at 24 (R. at 23)], but nowhere mentions Hargrove's divorce, which Hargrove explained resulted in large part due to his anxiety, depression, and inability to "do a lot of the things that, you know, obviously a normal spouse would want to do" [Dkt. 13-2 at 56 (R. 55)]. The ALJ may not simply address the evidence that supports his conclusion while omitting the contrary evidence that both undermines his conclusion and bolsters Hargrove's credibility. *See, e.g.*, *Bates v. Colvin,* 736 F.3d 1093, 1099

---

[3] Social Security Ruling 96-7p was superseded in March 2016 by Social Security Ruling 16-3p, 2016 WL 1119029, but S.S.R. 16-3p does not apply retroactively. Social Security Ruling 96-7p is therefore the operative ruling for this case.

6

(7th Cir. 2013).

The ALJ also discounted Hargrove's testimony because he "was able to work at various restaurants (albeit of short duration)." [Dkt. 13-2 at 29 (R. 28).] But the ALJ ignored the evidence that he was unable to hold down a regular job for more than a couple of months due to an inability to meet the social demands of employment. [Dkt. 13-2 at 58-59 (R. 57-58) (testimony at hearing of difficulties holding down job); Dkt. 13-12 at 83 (R. 679) (noting inability to work full time "due to anxiety being [sic] around others" and concluding that "records support levels of anxiety as reported"); Dkt. 13-6 at 96-97 (R. 261-62) (summary of Hargrove's work record).] For example, medical records reflect that Hargrove was fired from his position as janitor at an Arby's fast food restaurant "after he confronted the opening manager for coming in late regularly." [Dkt. 13-21 at 27 (R. 1354).]

As the Seventh Circuit has observed, such "logic is backward: a claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability. And, as we have explained, a claimant's desire to work is not inconsistent with her inability to work because of a disability." *Hill v. Colvin*, 807 F.3d 862, 868 (7th Cir. 2015). "Actually those [efforts to find work] were consistent with his wanting to lead a normal life yet being unable to land a job because he's disabled from gainful employment . . . ." *Voigt v. Colvin*, 781 F.3d 871, 876 (7th Cir. 2015). The ALJ had no basis to discredit Hargrove for "continu[ing] to seek employment that involved high social contact." [Dkt. 13-2 at 28 (R. 27).] Particularly given his well-documented indigence [*e.g.* Dkt. 13-21 at 41 (R. 137) (record from call to VA homeless prevention hotline indicating that Hargrove could not afford to renew lease)], the ALJ made an unsupported assumption that Hargrove sought employment requiring "high social contact" because he was capable of such work instead out of sheer necessity.

7

Indeed, that Hargrove could not manage to keep such employment for any length of time should have buttressed his credibility, not diminished it, and the ALJ at a minimum should have addressed the reasons for the short duration of Hargrove's employment.

Finally, the ALJ faulted Hargrove for having "compliance issues" and inconsistent treatment. [Dkt. 13-2 at 29 (R. 28).] But an ALJ must at a minimum consider possible explanations for compliance issues before drawing a negative credibility inference—especially for claimants with significant mental impairments. See *Jelinek v. Astrue*, 662 F.3d 805, 814 (7th Cir. 2011) (collecting cases). As the Seventh Circuit has observed, noncompliance may well be a side effect of the mental impairment itself. See *id.* The same is true with the "wax[ing] and wan[ing]" that the ALJ observed in Hargrove's treatment [Dkt. 13-2 at 29 (R. 28)], because such variability is generally consistent with the unpredictable difficulties associated with mental illness and depression. *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010) ("More importantly, symptoms that 'wax and wane' are not inconsistent with a diagnosis of recurrent, major depression."). Without some explanation of why Hargrove had compliance issues and inconsistent treatment, the ALJ was not permitted to discount Hargrove's credibility on these grounds.

Combined, the omissions and impermissible inferences in the ALJ's credibility assessment rise to the level of patent error. Hargrove's credibility is central to his arguments that the ALJ improperly addressed the evidence at step three and in his RFC determination. Accordingly, the ALJ's error in his credibility assessment mean that the ALJ's step three and RFC findings are not supported by substantial evidence. See *Hill v. Colvin*, 807 F.3d 862, 869 (7th Cir. 2015) (holding that error in credibility assessment cannot be harmless where claimant "testifie[s] that she is more limited" than the ALJ found). Remand is therefore required for the

Social Security Administration to give renewed consideration to Hargrove's application.

## V. Conclusion

For the aforementioned reasons, the Court should find that Hargrove has demonstrated reversible error in the ALJ's determination that Hargrove is not disabled. The District Judge should therefore **REVERSE AND REMAND** the Commissioner's decision.

Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), and failure to timely file objections within fourteen days after service shall constitute a waiver of subsequent review absent a showing of good cause for such failure.

Dated: 30 JUN 2017

_____
Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically
on all ECF-registered counsel of record via
email generated by the court's ECF system